IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs September 9, 2014

**KENZO A. QUEZERGUE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2011-B-1644    Cheryl Blackburn, Judge**

**No. M2014-00150-CCA-R3-PC - Filed October 14, 2014**

Petitioner, Kenzo A. Quezergue, was indicted in Davidson County for first degree felony murder and employing a firearm during the commission of a dangerous felony. Petitioner pled guilty to the lesser included offense of second degree murder in exchange for a sentence of forty years, to be served at 100% as a violent offender. Petitioner filed a timely petition for post-conviction relief alleging, inter alia, that he received ineffective assistance of counsel. After a hearing, the post-conviction court denied relief, finding that Petitioner had not proven his claims by clear and convincing evidence. Upon thorough review of the record, we agree. The judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Morgan E. Smith (on appeal) and Andrew Beasley (at hearing), Nashville, Tennessee, for Petitioner, Kenzo A. Quezergue.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for Respondent, State of Tennessee.

**OPINION**

*Factual Background*

On June 10, 2011, the Davidson County Grand Jury indicted Petitioner on one count of first degree felony murder and one count of employing a firearm during the commission of a dangerous felony. The facts of the case, as recited by the prosecutor during the plea hearing, are as follows:

[O]n November 1st, 2009, the victim in this case, Mr. Alvin Howse, and a Mr. Clifton Broadway traveled here from Jackson, Tennessee to purchase marijuana from a person that Mr. Broadway knew. And that person was Ms. Angela Wallace. Nobody else knew from Mr. Broadway's perspective about who he was coming to purchase the marijuana from. And he had been on the phone with Ms. Wallace throughout the day as they traveled here. When they got here[,] before they could get to Ms. Wallace's apartment, two masked men, men with their faces covered, came up and demanded money from Mr. Broadway and Mr. Howse. Mr. Broadway took off running, and masked man number one chased after him and eventually shot him. But he -- he did not die. While that was occurring[,] masked man number two shot and killed Mr. Howse. Mr. Broadway recognized the person who shot him as Rontarius Roberson. Even though he had had his face covered[, Mr. Broadway] knew him from Jackson. So Mr. Roberson was arrested, [and] Ms. Wallace was arrested based on the circumstances of that being the only way anybody would have known they were coming. And that's the way things stood for over a year until Mr. Roberson said that he had been in contact with the person who had actually shot Mr. Howse, which was [Petitioner]. And he would make a phone call and try to get [Petitioner] to talk about shooting Mr. Howse. And he did. And [Petitioner] did talk about shooting Mr. Howse on that phone call. And [Petitioner] was arrested.

Detective [Derry] Baltimore interviewed him. And after hearing a little bit of the [recorded] phone call . . . [Petitioner] told Detective Baltimore that he was the second person that was involved in this and that he had shot Mr. Howse. This was in Davidson County down around Antioch. And that would be the State[']s proof in this case.

Petitioner's trial counsel filed a motion to suppress Petitioner's statement to police on the grounds that the confession was coerced. The motion was denied by the trial court on June 21, 2012.[1] On June 22, 2012, Petitioner pled guilty to the lesser included offense

---

[1] Neither the motion to suppress nor the order denying the motion are included in the record on appeal; however, both are referenced in the post-conviction court's order as the same judge heard both matters.

of second degree murder in exchange for a Range II sentence of forty years in incarceration, to be served at 100% as a violent offender.[2] The charge of employing a firearm during the commission of a dangerous felony was dismissed.

On January 28, 2013, Petitioner filed a pro se petition for post-conviction relief. Counsel was appointed, and an amended petition was filed on June 28, 2013. Petitioner alleged that he did not knowingly and voluntarily waive his Fifth and Sixth Amendment rights during his police interrogation, that he received ineffective assistance of counsel, and that his guilty plea was not knowing and voluntary. Specifically, as to the ineffective assistance of counsel claim, Petitioner alleged that his trial counsel did not argue or investigate intoxication as a ground to suppress his statement to police, did not provide him with a copy of the recorded phone call between himself and his co-defendant prior to the entry of his guilty plea, and incorrectly explained that his sentence would be served at 85% release eligibility. A post-conviction hearing was held on September 4, 2013.

At the post-conviction hearing, Petitioner testified that during the police interrogation he was told that the police would go after his family members as accessories after the fact if he did not confess. Petitioner also testified that he had smoked marijuana just prior to his arrest and that he was under the influence of marijuana during the interview. He did not tell the police officers that he was high, and he could not remember if he told his trial counsel that he had been under the influence when he confessed.

During the interrogation, Petitioner listened to approximately ten seconds of a recorded phone call between himself and his co-defendant before telling the police that he did not want to hear any more. Petitioner testified at the post-conviction hearing that his trial counsel never provided him with a copy of that recorded phone call to listen to prior to the entry of his guilty plea. At the time of the post-conviction hearing, Petitioner still had not listened to the recorded phone call and could not say how listening to it prior to his plea would have affected the outcome of his case. Petitioner testified that he just wanted "to hear the evidence and to hear what was said and maybe -- you know, might took [sic] it to trial or something."

Petitioner testified that he was under the impression that his sentence would be served at 85% release eligibility, rather than 100%. He testified that trial counsel explained that his sentence was "going to be forty at eighty five percent." Petitioner testified that trial counsel told him that they were scheduled to go to trial and that the jury was "going to come back with a guilty verdict and [he was] going to get life right then

---

[2] Petitioner qualified as a Range I offender, and the trial court noted during the plea hearing that the forty-year sentence was an "out of range" sentence. The sentencing range is not being challenged in this appeal.

and there." Petitioner testified that his options were "either take the forty or go to trial and get life." When asked if he wanted a trial, Petitioner replied, "I can't say. I can only speak for when time [sic] comes."

A transcript of the guilty plea hearing was entered as an exhibit. The trial court mentioned at least twice that Petitioner's sentence was to be served at 100%, and he acknowledged that he understood both times. At no time did the trial court mention that the sentence would be served at 85% or otherwise mention early release or parole. When asked why he agreed during the plea hearing that the sentence would be served at 100%, Petitioner explained that he was not paying attention to what the judge was saying because he was more focused on the victim's mother in the courtroom.

Trial counsel testified at the post-conviction hearing that he has practiced law since 2000 and that his practice has focused almost exclusively on criminal defense. He could not recall if he told Petitioner that he would serve 85% of his sentence rather than 100%. Trial counsel did recall showing Petitioner a comparison between a life sentence (sixty years at 85%, or fifty-one years) to a forty-year sentence at 85% (about thirty-five years).

Trial counsel could not recall if Petitioner told him that he was under the influence of marijuana when he was interviewed. Trial counsel watched the police interview, and he testified that he usually looks for signs of intoxication. However, he explained that the standard for intoxication is a "very high bar for the defense."

Trial counsel testified that he experienced considerable difficulty getting audio recordings to the Petitioner while he was in jail. Trial counsel explained that he sent an iPod to the jail, but the iPod disappeared. He also attempted to bring the recordings to the Petitioner on discs and on a laptop, but he was told by the jail that he could not. Trial counsel believed that he sent Petitioner a transcript of the recorded phone call. Trial counsel described the phone call as "another detailed confession" in addition to the Petitioner's statement to the police. He believed that if the case had gone to trial, the jury would have convicted Petitioner because "there were two independent confessions."

On December 18, 2013, the post-conviction court filed an order denying the petition. The post-conviction court found that Petitioner failed to show that trial counsel was deficient and was "equivocal" as to whether he would have insisted upon going to trial. The post-conviction court also discredited Petitioner's claim that he was not paying attention during the guilty plea hearing and found that he entered a knowing and voluntary plea. Petitioner filed a timely notice of appeal on January 17, 2014.

-4-

*Analysis*

## I. Standard of Review

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, this Court gives deference to the trial court's decision on questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence. *Momon*, 18 S.W.3d at 156 (citing *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). This Court will not reweigh or reevaluate the evidence presented below and is bound by the findings of the post-conviction court unless the evidence preponderates otherwise. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). However, the post-conviction court's conclusions of law and application of the law to the facts are subject to de novo review with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457 (Tenn. 2001).

## II. Motion to Suppress

Petitioner asserts that he did not voluntarily waive his Fifth and Sixth Amendment rights during his statement to the police. However, this claim was previously litigated in a motion to suppress, which was denied by the trial court. "[A] defendant cannot lose a motion to suppress, plead guilty, and then file a petition for post-conviction relief to litigate anew the motion to suppress." *Eric Ross Sewell v. State*, No. M2001-02134-CCA-R3-PC, 2002 WL 1204929, at *19 (Tenn. Crim. App. June 5, 2002). As our supreme court has explained:

> Once a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel did not meet appropriate standards.

*State v. Hodges*, 815 S.W.2d 151, 153 (Tenn. 1991) (citing *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973)). Therefore, we decline to address this claim on the merits. We will

discuss the motion to suppress only insofar as it relates to Petitioner's claim of ineffective assistance of counsel.

*III. Ineffective Assistance of Counsel*

Both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. The test for ineffective assistance of counsel is a two-prong test: a petitioner must show that the service rendered by trial counsel was deficient and that the deficient performance was prejudicial. *Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996); *see Strickland v. Washington*, 466 U.S. 668 (1984). Because a petitioner must establish both prongs in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580. In other words, if a petitioner fails to demonstrate prejudice, a reviewing court need not determine the validity of the claim that counsel's performance was deficient. *Strickland*, 466 U.S. at 697.

The test for deficient performance is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Counsel's performance is considered reasonable "if the advice given or the services rendered [were] within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). To be considered deficient, counsel's acts or omissions must fall below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579.

In order to demonstrate prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. In order to show prejudice with regard to a guilty plea, Petitioner would have to demonstrate that, "but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Grindstaff v. State*, 297 S.W.3d 208, 217 (Tenn. 2009) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). A petitioner is not entitled to the benefit of hindsight to second-guess a reasonably based trial strategy or a sound, but unsuccessful, tactical decision. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994).

In this case, Petitioner alleged that his trial counsel was ineffective for failing to raise intoxication as a ground to suppress his statement to police. However, at the post-conviction hearing, Petitioner was not sure whether he actually told trial counsel that he had smoked marijuana just prior to the interview. Trial counsel testified that he watched

the recording of the interview and that he usually looks for signs of intoxication. Trial counsel explained that the standard to suppress statements due to intoxication is a "high bar," requiring the defense to establish that the defendant is unable to give lucid responses.[3] Petitioner could not point to any examples in the statement where his responses were incoherent or non-responsive. Petitioner has not established by clear and convincing evidence that trial counsel's performance in this regard was deficient.

Petitioner also alleged that trial counsel did not provide a recording of the controlled phone call between Petitioner and his co-defendant for Petitioner to listen to prior to the entry of his guilty plea. Trial counsel testified that he attempted to get the recording to Petitioner on several occasions but was unsuccessful. First, he sent an iPod to the jail, which was lost. Then, he attempted to bring in disks and a computer but was told by the jail that he could not. Trial counsel testified that he was able to provide Petitioner with a transcript of the conversation. We find that trial counsel was not deficient in his attempts to get the recording to Petitioner.

Moreover, Petitioner has failed to establish that he was prejudiced by the inability to hear the recording. Petitioner asserts that if he had heard the recorded conversation with his co-defendant, he could have "helped facilitate a defense." However, the post-conviction court found that Petitioner "already had knowledge of the call content" because he "was a party to the phone call." Additionally, the post-conviction court found that Petitioner had the opportunity to hear the recording during his interview with the police, but he "elected to stop because he did not want to hear more." During the post-conviction hearing, Petitioner testified that he still had not heard the entire recording and could not say how listening to it would have affected the outcome of his case. He testified that he just wanted "to hear the evidence and to hear what was said and maybe -- you know, might took [sic] it to trial or something." Therefore, even if we were to find trial counsel was deficient in failing to let Petitioner listen to the recording of the controlled phone call, Petitioner has failed to establish prejudice by clear and convincing evidence.

Finally, Petitioner alleges that trial counsel was ineffective for incorrectly explaining that Petitioner's sentence would be served at 85% release eligibility. Trial counsel testified that he could not remember if he told Petitioner that he would definitely serve 85% of the sentence or explained it as 100% of the sentence less 15% credit for

---

[3] Intoxication, standing alone, is not a sufficient ground to suppress a statement if the evidence shows that the defendant understood his rights. *State v. Bell*, 690 S.W.2d 879, 882 (Tenn. Crim. App. 1985). As long as that statement is coherent, *State v. Perry*, 13 S.W.3d 724, 738 (Tenn. Crim. App. 1999), as shown by the fact that the accused was able to narrate events and state his own participation, the statement is admissible. *State v. Green*, 613 S.W.2d 229, 232-33 (Tenn. Crim. App. 1980).

good behavior.[4]  However, Petitioner never testified at the post-conviction hearing that if he understood that his sentence was to be served at 100%, he would have insisted upon going to trial.  When specifically asked whether he wanted to go to trial, Petitioner replied, "I can't say.  I can only speak for when time [sic] comes."  The post-conviction court found that Petitioner was "equivocal as to whether in hindsight he wants a trial."  In fact, Petitioner's chief complaint seems to be that his attorney did "not get[] a better plea deal" and that forty years is "a lot of time."  Additionally, Petitioner's responses to the trial court's questions during the plea hearing, as discussed further below, belie his claim that he was misinformed as to the percentage of his sentence that he would have to serve. Petitioner acknowledged that he went over the plea petition with trial counsel and that he understood the consequences of his plea.  Petitioner is not entitled to relief on his claim of ineffective assistance of counsel.

## IV.  Voluntariness of Plea

When reviewing a guilty plea, the primary question is whether it was entered knowingly, voluntarily, and understandingly.  *Boykin v. Alabama*, 395 U.S. 238, 242-22 (1969).  "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'"  *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Boykin*, 395 U.S. at 242-43).  To determine whether a plea has been made knowingly, voluntarily, and understandingly, a court must look at the totality of the circumstances, including such factors as:

> the relative intelligence of the [petitioner]; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Powers v. State*, 942 S.W.2d 551, 556 (Tenn. 1996) (quoting *Blankenship*, 858 S.W.2d at 904).  "If the accused is to make a 'voluntary and intelligent choice among the alternative courses of action' available to him, counsel must advise the accused, among other things, of the choices that are available to him as well as the probable outcome of the choices." *Parham v. State*, 885 S.W.2d 375, 384 (Tenn. Crim. App. 1994).

---

[4] Petitioner testified at the post-conviction hearing that he now understands that he may be eligible for up to 15% reduction of his sentence based on good behavior, which would be the equivalent of serving 85% of the sentence.

When a petitioner makes a solemn declaration in open court that his or her plea is knowing and voluntary, it creates "a formidable barrier in any subsequent collateral proceeding" because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). A guilty plea is not only an admission of guilt to the offenses charged in the indictment; it also serves as "the petitioner's consent that judgment of conviction may be entered without a trial." *Alfonso C. Camacho v. State*, No. M2008-00410-CCA-R3-PC, 2009 WL 2567715, at *7 (Tenn. Crim. App. Aug. 18, 2009), *perm. app. denied* (Tenn. Feb. 22, 2010) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). As this Court has opined:

> A petitioner's sworn responses to the litany of questions posed by the trial judge at the plea submission hearing represent more than lip service. Indeed, the petitioner's sworn statements and admissions of guilt stand as a witness against the petitioner at the post-conviction hearing when the petitioner disavows those statements.

*Id.*

Petitioner contends that his guilty plea was entered unknowingly and involuntarily because he did not understand that the sentence imposed was to be served at 100% rather than at 85% release eligibility. During the guilty plea hearing, the trial court mentioned several times that Petitioner was receiving an out-of-range forty-year sentence to be served at 100%, and Petitioner acknowledged that he understood. Petitioner now claims that he was not paying attention to the trial court's questions because he was distracted by the presence of the victim's mother and her "wails for sorrow." The post-conviction court did not find this assertion to be credible, finding that the transcript of the plea hearing showed that Petitioner answered questions appropriately, responding in the negative to some and articulating the length of his jail credit. The post-conviction court found that the Petitioner's guilty plea was made with an awareness of the consequences and that it was knowingly and voluntarily entered. The evidence in the record does not preponderate otherwise. Therefore, Petitioner is not entitled to relief on this ground.

## CONCLUSION

Based upon the foregoing reasons, we affirm the decision of the post-conviction court.

_____
TIMOTHY L. EASTER, JUDGE

-9-