**STATE of Tennessee, Appellee,**

v.

**Douglas BELL, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Jan. 8, 1985.

Permission to Appeal Denied by Supreme Court April 1, 1985.

R. Price Nimmo, James R. Omer, Richard S. Maxwell, Sp. Counsel, Nashville, for appellant.

W.J. Michael Cody, State Atty. Gen. & Reporter, David M. Himmelreich, Asst. State Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., Cheryl Blackburn, Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

BYERS, Judge.

The defendant was convicted of murder in the first degree and sentenced to life

imprisonment. He was also convicted of assault with intent to commit murder in the first degree and sentenced to serve twenty years. The record does not show how the two sentences were to be served, and they are therefore to be served concurrently.

The defendant says the trial judge erred in refusing to reopen the proof on a motion to suppress evidence, says the trial court erred in not suppressing statements which he made and a Winchester rifle which he revealed to the state, says the evidence is insufficient to sustain the verdicts because of lack of premeditation, says the exclusion of jurors who were unalterably opposed to the death penalty was erroneous, and says the court erred in ordering the defendant to obtain a psychiatric report when none had been prepared by the psychiatrist who testified for him.

The judgments are affirmed.

The undisputed proof shows that the defendant, who had lived with the woman who was the victim of the assault in this case, became angry over their separation and litigation in which some of his property was awarded to her. On August 4, 1982, the defendant went to the woman's home armed with a .30–30 Winchester rifle and attempted to shoot the woman. He shot through a door of a bedroom in which the woman was hiding, and she was struck by debris on the head and leg. A visitor in the home returned fire with a shotgun through the door, superficially wounding the defendant on the arm.

The daughter and granddaughter fled from the house and called the police who, along with paramedics, responded to the call. When the officers arrived, they started to set up a procedure to enter the home. One of the officers was shot and killed by the defendant.

Upon being arrested, the defendant made statements to the officers implicating himself in these crimes and directed the officers to the place where he had hidden the weapon used in the crimes.

The defendant filed a motion to suppress the statements he made and to suppress the introduction of the weapon on the basis that he was so intoxicated that he could neither understand his right not to make statements nor knowingly and voluntarily waive his rights.

An evidentiary hearing was had on the motion, at which time the state presented evidence by way of officers involved in the investigation of the case. The defendant testified about the events surrounding his making of statements.

The officers testified that when arrested the defendant appeared to them to be coherent and not intoxicated and that he understood his rights and voluntarily waived them. The evidence showed that two hours after the defendant's arrest his blood alcohol content was .17 percent.

The defendant testified he had been drinking for several hours before the crime and did not remember being advised of his rights or having waived his rights or having signed a waiver-of-rights form.

■ We are impressed, as was the trial judge, with the actions of the defendant after his arrest which indicated the defendant was alert and aware of what was taking place, and knowingly waived his *Miranda* rights.

After the arrest, the officers, after giving *Miranda* warnings, asked the defendant what he had done with the gun. The defendant told them he had hidden the gun in a tree located along an alley near the scene of the crime. The defendant was placed in a patrol car and gave directions to the officers on how to reach the alley. This route required traveling over different streets and changing directions en route. When they arrived at the alley, the defendant directed the officers to drive down the alley, told them to stop, indicated a tree, and told them to look inside and they would find the gun. The officers did so and found the gun exactly where the defendant said it would be.

The trial judge found that if the defendant had been too intoxicated to understand his rights, he could not have directed the officers to the location of the gun. He therefore found the defendant understood his rights and knowingly waived them.

■ Where there is material evidence to support the finding of the trial judge on the factual determination of compliance with *Miranda*, the decision is conclusive on appeal. *State v. Johnson*, 661 S.W.2d 854 (Tenn.1983). There is material evidence to support the finding of the trial judge on this issue.

■ Further, intoxication or mental unsoundness is not alone sufficient to bar the introduction of statements made by an accused if the evidence also shows the accused was capable of understanding his rights. *See State v. Green*, 613 S.W.2d 229 (Tenn.Cr.App.1980).

In context of the suppression issue, the defendant further says the trial judge erroneously refused to reopen the proof to allow him to present evidence from a psychologist as to the low intelligence of the defendant and from a psychiatrist who would testify the defendant was probably not capable of knowingly and intelligently waiving his *Miranda* rights.

The suppression hearing was held on April 8, 1983, and the trial judge did not immediately rule upon the motion. The motion to reopen the proof was made on April 13, 1983. The trial judge denied the suppression motion on May 12, 1983, and did not rule on the motion to reopen prior to this.

■ It is within the discretion of the trial judge to decide whether to reopen the proof for further evidence, and the decision of the trial judge thereon will not be set aside unless there is a showing that an injustice has been done. *Higgins v. Steide*, 47 Tenn.App. 42, 335 S.W.2d 533 (1959).

■ Further, unless the evidence sought to be introduced on a motion to reopen proof is such as would show a different result would probably occur, the action of the trial judge in refusing to reopen the proof will not be set aside.

■ In this case, the trial court had before it the positive testimony of the state's witnesses as to the defendant's condition and action at the time the statements were made. The evidence which the defendant wished to introduce subsequently was that of expert witnesses whose testimony, for the most part, would be based upon hypothetical facts, and was largely speculative. Further, even if intoxication and mental deficiency of the defendant were shown, this would not bar the introduction of the statements if the criterion in *Green, supra,* were met, as they were in this case. We therefore conclude that the trial judge did not err in refusing to reopen the proof.

The defendant says there is no credible evidence to show the killing of the officer and the wounding of the woman was done with premeditation, and further that his intoxication at the time made him incapable of premeditation.

■ The jury may find premeditation from the facts and circumstances surrounding the crime. The evidence shows the defendant went to the woman's home armed with a .30–30 rifle, that he had ill will toward her, and that he deliberately attempted to shoot her. The evidence further shows that when the officers arrived, the defendant fired a fatal shot at one of the officers, that he fired other shots in the area where the officers were, and that he fled the scene of the crime and concealed the weapon. From all of this the jury could find the defendant premeditatedly committed these crimes.

■ On the matter of intoxication as evidence of inability to premeditate, the evidence must show an accused to be so intoxicated as to be unable to form a premeditated and deliberate design to kill. *State v. Bullington*, 532 S.W.2d 556 (Tenn.1976).

■ Whether the defendant is so intoxicated is, of course, for the jury to determine. The jury had evidence on both sides of the question, and they accepted the state's evidence and rejected the defendant's evidence. The evidence supports this

finding and was sufficient for the jury to find guilt beyond a reasonable doubt. *See* T.R.A.P. 13(e).

The defendant made demand of the state for discovery under Rule 16(a), Tennessee Rules of Criminal Procedure, on January 13, 1983. The demand included material discoverable under section (a)(1)(D) of the rule. On March 22, 1983, and again on July 22, the state, pursuant to Rule 16(b)(1) moved for reciprocal discovery. The state sought copies of medical reports, etc., made by a psychiatrist who had examined the defendant and who was to be called as a witness for him.

Counsel for the defendant responded by saying that the psychiatrist had made no reports on the results of the examination and that any notes were not discoverable. Counsel conceded he had conferred with the doctor.

It is clear that Rule 16 contemplates reciprocal discovery within areas not otherwise excluded by the rule. Reports of psychiatrists regarding their findings on examination of an accused who has given notice of an intent to rely upon the defense of insanity are not otherwise excluded by this rule, if the psychiatrist is to be called to testify.

The trial judge, upon hearing the motion by the state, directed that a report be furnished on a day certain or, in the alternative, that the psychiatrist be submitted for deposition by the state.

The defendant further resisted this motion by saying that had no report been made to counsel, no memoranda existed at the time of the hearing, and none were to be prepared.

We do not think that the intent of Rule 16, relating to the duty of reciprocal discovery, can be frustrated by the situation shown here. It is common knowledge among lawyers that doctors make notes and findings upon examination of patients and, absent unusual circumstances, doctors give written reports to attorneys in cases when the doctor is aware that the examination is being conducted for the purpose of giving testimony.

To allow the defendant to evade the reciprocal discovery rule on the basis asserted here would effectively nullify the meaning of Rule 16(b)(1)(B), a result which we do not adopt. We, therefore, hold the trial judge did not err as to the defendant in ordering him to deliver a report of the findings of the psychiatrist, either by way of memorandum or otherwise.[1]

We conclude, however, under Rule 15, Tennessee Rules of Criminal Procedure, that the ordering of a deposition for discovery purposes was not authorized but that such order was harmless error at most.

The defendant has extensively argued in his brief that the excusing of jurors who stated they were unalterably opposed to the imposition of the death penalty under any circumstances and who said they would not consider this as a viable punishment denied him a jury composed of a representative cross section of jurors from the community.

In support of this claim the defendant relies upon those cases which prohibit the exclusion of identifiable classes of people from jury service on the basis of race and gender.

The defendant argues that those opposed unalterably to the death penalty constitute an identifiable class whose exclusion is impermissible. This we find not to be tenable. To accept the defendant's theory would put the court in the ludicrous position of accepting jurors who unequivocally state they will not follow the law. None of the cases relied upon by the defendant compel such a result, and we do not sanction it.

DWYER and O'BRIEN, JJ., concur.

---

1. Whether the psychiatrist had any standing to object to such order was for him to assert, not the defendant. *See State v. Fears,* 659 S.W.2d 370 (Tenn.Cr.App.1983).