IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 18, 2026 Session

## STATE OF TENNESSEE v. LAMAR DENSON

**Appeal from the Criminal Court for Knox County**
**No. 119367   D. Kelly Thomas, Jr., Senior Judge**
_____

**No. E2025-00104-CCA-R3-CD**
_____

The defendant, Lamar Lanair Denson, was convicted by a Knox County Criminal Court jury of the sale of fentanyl, a Class C felony; possession of heroin with intent to sell or deliver, a Class B felony; possession of fentanyl with intent to sell or deliver, a Class C felony; possession of a firearm by one with a prior conviction for a felony drug offense, a Class C felony; maintaining a dwelling for the unlawful selling of controlled substances, a Class D felony; and possession of drug paraphernalia, a Class A misdemeanor.  The trial court imposed an effective sentence of fourteen years' incarceration followed by five years on supervised probation.  On appeal, the defendant argues that the trial court abused its discretion in: (1) denying his motion to dismiss Count 5 of the indictment, a charge related to the sale of fentanyl, due to the loss of potentially exculpatory evidence; and (2) reopening the proof to allow the State to enter into evidence a stipulation regarding the defendant's status as having a prior conviction that would disqualify him from possessing a firearm .  Following a thorough review of the record, the briefs, and oral arguments of the parties, we affirm the judgments of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and JILL BARTEE AYERS, J., joined.

Dillon E. Zinser (at trial and on appeal) and Holly Nehl-Zinser (at trial), Knoxville, Tennessee, for the appellant, Lamar Lanair Denson.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Greg Eshbaugh and Jodie Bush, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## *Facts and Procedural History*

The defendant was charged in an eighteen-count indictment with various drug-related offenses arising out of a series of controlled drug buys with a confidential informant. Before trial, the State dismissed Counts 1, 2, 3, 4, 7 and 8 of the indictment, and the defendant proceeded to trial on the remaining charges:

**Count 5:** sale of fentanyl on June 8, 2020

**Count 6:** sale of acetylfentanyl on June 8, 2020

**Count 9:** possession of heroin with intent to sell or deliver on June 11, 2020

**Count 10:** possession of fentanyl with intent to sell or deliver on June 11, 2020

**Count 11:** possession of a firearm with the intent to go armed during the commission of a dangerous felony on June 11, 2020

**Count 12:** possession of a firearm with the intent to go armed during the commission of a dangerous felony by one with a prior conviction for dangerous felony on June 11, 2020

**Count 13:** possession of a firearm with the intent to go armed during the commission of a dangerous felony by one with a prior conviction for dangerous felony on June 11, 2020

**Count 14:** possession of a firearm by one with a prior conviction for a felony drug offense on June 11, 2020

**Count 15:** maintaining a dwelling for the unlawful keeping of controlled substances

**Count 16:** maintaining a dwelling for the unlawful selling of controlled substances

**Count 17:** possession of marijuana on June 11, 2020

**Count 18:** possession of drug paraphernalia on June 11, 2020

The proof at trial showed that the defendant became the target of a drug investigation conducted by the Knoxville Police Department ("KPD") in June 2020. On June 8, 2020, Investigator Todd Macfaun used a confidential informant to purchase drugs from the defendant. The controlled buy started with the informant making a recorded phone call to the defendant in Investigator Macfaun's presence and arranging to purchase $80 of drugs. The audio recording was entered into evidence, and Investigator Macfaun testified that he recognized the defendant's voice on the call.

Investigator Macfaun patted the informant down to ensure he had no contraband or money, provided the informant with $80 of recorded government funds, and drove him to a parking lot a few blocks from the defendant's house on Mansion Avenue. Investigator Macfaun observed the informant walk the route to the defendant's home, while also tracking him with the covert recording device with which the informant was outfitted.

- 2 -

Other officers were also scattered throughout the area to provide constant surveillance. Investigator Macfaun watched the informant enter the front door of the defendant's residence and walk back out a short time later. The informant returned to Investigator Macfaun's vehicle and turned over the narcotics he had purchased. The informant was then searched again for any additional money or drugs.

Investigator Macfaun returned to the office where he downloaded the video of the drug purchase from the recording device and watched it to make sure it corroborated the informant's report. Investigator Macfaun saved the video on the KPD computer system and deleted it from the device. Investigator Macfaun also weighed and photographed the procured rock-like substance, which later testing by the Tennessee Bureau of Investigation revealed to be 0.14 grams of acetylfentanyl, fentanyl, and metonitazene.

Within days, the City of Knoxville's computers were hacked, affecting Investigator Macfaun's ability to download the video of the drug purchase from the computer system onto a disc for evidence. However, Investigator Macfaun reiterated that he had reviewed the video after the purchase to ensure it corroborated the informant's report; he was just unable to download it from the system following the hack.

Officers executed a search warrant of the defendant's residence on June 11, 2020, around 8:30 a.m. Among the items officers recovered were digital scales, several packages containing various colored powders, plastic baggies, "corner" baggies, and an unknown person's EBT card, all of which were consistent with drug sales; and four cut straws, which were consistent with personal drug use. The powder weighed 0.84 grams, 0.34 grams of which tested positive for heroin and fentanyl. Officers also found a loaded rifle between the mattress and box springs, a rifle magazine and an empty handgun holster in the bedroom closet, and "quite a bit" of loose ammunition in the bedroom and closet. The defendant's identification and a utility bill for the residence addressed to the defendant were found in the bedroom of the home. Detective Philip Jinks with the organized crime unit of the KPD opined, based on his experience and the evidence found in the search of the defendant's home, that the defendant and his girlfriend were "dealer users," meaning they were "dealing to support their habit."

The defendant was taken into custody and gave a statement to police. The defendant admitted that he had been living at the Mansion Avenue address for three or four months and that he had been selling drugs. However, the defendant claimed that the rifle found under the mattress belonged to his girlfriend, and he did not know it was there.

The defendant consented to a forensic download of his cell phone, which was performed by Detective Jinks. A series of text messages between the defendant and a contact saved as "Money Courtney" were extracted from the phone. In a text message at

8:45 p.m. on June 10, 2020, the evening before the defendant's home was searched, the defendant texted Money Courtney, "Just checking to see what time you were going to have that for me tonight[.]" Money Courtney responded, "It[']ll be on my card late tonight around 11p to 12a . . . Or early morning 4a-6a . . . They disburse unemployment 2 different times on pay day. But [I] ain't forgot ya[.]" A short while later, Money Courtney added, "I wish it[']d go on now! . . . I[']m broke as f**k, sick as f**k. Just waiting on it to hit." Detective Jinks explained that people who are addicted to heroin or fentanyl become "violently ill with withdraw sickness" if they are unable to get the drug and commonly refer to that as "being sick." The following morning, around 5:22 a.m., Money Courtney sent the defendant a text saying, "Lmk as soon as I can come[.]" At 8:04 a.m., the defendant responded, "Here[.]" Money Courtney replied, "Ok otw [I] got what [I] owe you and need the norm[.]" The defendant responded, "K," and then thirty-five minutes later, at 8:40 a.m., there was an incoming call from Money Courtney to the defendant that went unanswered. Detective Jinks opined that the defendant was unable to answer the call because he had been taken into custody by that time. Detective Jinks further opined that the nature of the text messages in relation to the timing of the execution of the search warrant indicated that the heroin and fentanyl recovered from the defendant's residence were possessed for distribution.

At the conclusion of the State's proof, the defendant made a motion for judgment of acquittal. The defendant presented his arguments concerning the drug possession and drug sale charges, as well as the firearms offense charged in Count 11. With regard to the firearms offense charged in Count 14, the defendant advised the court that he and the State had entered a stipulation that he had a prior disqualifying conviction but that "the stipulation formally hasn't been entered. I mean, we gave it to Your Honor. I don't know if it needs . . . to be entered." The court responded, "It does need to be entered. Yeah." The defendant answered, "Right."

After additional argument, the defendant stated that he was amending his earlier argument regarding Count 14 to assert that even though he signed the stipulation, it could not be entered into evidence at this point because the State had rested its case. The court indicated that it thought it had received the stipulation. The State agreed that the court had received the stipulation, and the clerk confirmed that the stipulation was filed.

The State offered its response to the defendant's motion for judgment of acquittal, and then the defendant revisited his argument about the stipulation. The defendant requested the dismissal of Count 14, asserting:

Even though we signed it and passed it up to Your Honor, the [S]tate has the burden of proof. They have the duty to introduce that into evidence. The

Court has to look at what the evidence is, and . . . if it hasn't been entered into evidence, it can't be considered[.]

The trial court found that it had filed the stipulation with the clerk but had not received it back from the clerk and the State had not read it aloud to the jury. The court determined that it had discretion to reopen the proof and allow the State to read it into evidence. The court went on to rule on the motion for judgment of acquittal, granting it with regard to Count 17.

The trial court proceeded to reopen the State's proof, explaining to the jury that "there's a matter of proof in the State's case in chief that the document was filed, but it wasn't made an exhibit and published to you. So I'm going to reopen the [S]tate's proof for that sole purpose." The State then read the stipulation to the jury, reciting that "the parties agree to stipulate that the defendant has a prior conviction that would disqualify him from possessing a firearm pursuant . . . to TCA 39-13-1307." After that, both parties rested their cases without presenting additional proof.

The jury returned with a verdict finding the defendant guilty, as charged, in Counts 5, 9, 10, 14, 16 and 18. The jury found the defendant not guilty in Counts 6, 11 and 15. The trial court dismissed Counts 12 and 13 by operation of law due to the acquittal in Count 11. Following a sentencing hearing, the trial court imposed an effective sentence of fourteen years' incarceration followed by five years on supervised probation. The defendant appealed.

*Analysis*

On appeal, the defendant argues that the trial court abused its discretion in denying dismissal of Count 5 of the indictment due to the loss of potentially exculpatory video evidence from the confidential informant and in reopening the proof to allow the State to enter a stipulation regarding the defendant's status as having a prior conviction that would disqualify him from possessing a firearm into evidence. The State responds that the trial court acted within its discretion in determining that the pattern jury instruction on missing evidence was the appropriate remedy rather than dismissal and in reopening the proof so the State could enter the stipulation into evidence. We agree with the State.

## I. *Ferguson*

The defendant filed a pretrial motion to dismiss the indictment, or in the alternative, for a jury instruction regarding the lost camera recordings of a confidential informant pursuant to *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999), and *State v. Merriman*, 410 S.W.3d 779 (Tenn. 2013).

The trial court conducted a hearing on the motion, at which Detective Todd Strickenberger testified that on June 11 or 12, 2020, officers with the KPD arrived at work to find "blue screen[s]" on their network computers. They were advised that the network had been "hacked by an outside country" and would have to pay a ransom in order to access "pretty much all of the data" for every unit within the department. The City of Knoxville's IT department maintained the KPD's computer system and had firewalls in place to protect the system, but the hackers bypassed the firewalls. The City of Knoxville "could not pay or did not pay" the ransom, so all the data was lost.

Detective Strickenberger then explained the procedure for conducting controlled drug purchases using a confidential informant. The police have the confidential informant conduct a recorded phone call with the target. The confidential informant and his or her vehicle are searched to ensure the informant does not take money or contraband to the purchase. The informant is outfitted with a recording device and government funds for the purchase. Officers take the informant to the target location or surveil the informant if they are driving themselves. Officers observe the transaction and once completed, connect with the informant to retrieve the recording device and drugs. The drugs are weighed and tested, and the recording is downloaded onto the server or onto a CD or thumb drive. Officers review the recording to ensure the proper protocols were followed.

Detective Strickenberger was personally involved in the third controlled purchase in this case and stated from either personal knowledge or information from other officers that proper protocol was followed for all three controlled purchases. Detective Strickenberger affirmed that drugs were recovered after each controlled purchase and that the drugs were consistent with those found during the search of the defendant's house.

The defendant argued that the State had a duty to preserve the video evidence of the controlled drug buys and that the State was negligent "for not having a computer system that could withstand being hacked" or for not having a backup system. The defendant asserted that the evidence was "highly significant" in that it "provide[d] potential exculpatory value because the actual transaction itself show[ed] who did what and what level of culpabilities existed between the parties." The defendant averred that there was no suitable substitute for the video evidence and that he could not effectively cross-examine the witnesses without the videos. Accordingly, the defendant asked that the trial court dismiss the indictment or, in the alternative, give a jury instruction regarding the missing evidence.

The State conceded it had a duty to preserve the evidence but asserted that the loss of evidence was, at most, "simple negligence" because it was due to the Knoxville Police Department's secure system being hacked by an outside party. The State also asserted that

the videos were of marginal significance because of the sufficiency of the other evidence, including: a recording of the call between the defendant and the confidential informant setting up a controlled drug buy; testimony from the investigating officer regarding the procedures for ensuring the integrity of controlled purchases, the substance purchased, and the officer's review of the video footage before it was lost to confirm the confidential informant's account; the drugs recovered during the search of the defendant's home; and the defendant's admission that he sold drugs to support his drug habit. The State argued that dismissal would be "an extreme remedy under these circumstances"; rather, a jury instruction was the appropriate remedy.

The trial court found the State was negligent for failing to preserve the recordings by either "digitally protect[ing]" them or downloading a physical copy, but it also found the State's actions were not "willful or intentional by any stretch that would justify dismissing these charges." Though the video evidence was "significant," the trial court concluded it did not have enough information at that juncture to consider the "reliability or the probative value of the other evidence or the sufficiency of the other evidence." The court denied the defendant's motion as to dismissal, granted the defendant's motion as to a jury instruction, and advised that it would entertain a renewal of the motion at trial if appropriate.

After the close of the State's proof, the defendant renewed his *Ferguson* motion and asked for dismissal of the indicted counts related to the controlled buy on June 8, 2020, asserting he was unable to "meaningful[ly] cross-examin[e]" Investigator Macfaun without the video. Again, the State argued that the evidence was not lost due to any actions of the officers and that a jury instruction, rather than dismissal, was the appropriate remedy. The court observed that it was not "self[-] evident that the evidence would have been exculpatory in the first place" and that Investigator Macfaun testified that he watched the video to confirm the informant's report. The court ultimately denied the motion to dismiss but granted the request for a jury instruction.

On appeal, the defendant argues the trial court abused its discretion in denying his motion to dismiss Count 5 of the indictment, a charge related to the sale of fentanyl, due to the loss of potentially exculpatory evidence.

Every criminal defendant is afforded the right to a fair trial by both the Due Process Clause of the Fourteenth Amendment to the United States Constitution and article I, section 8 of the Tennessee Constitution. U.S. Const. amend 14; Tenn. Const. art. I, § 8. "To facilitate this right, a defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to guilt or relevant to punishment." *Ferguson*, 2 S.W.3d at 915 (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). "Even in the absence of a specific request, the prosecution has a constitutional

duty to turn over exculpatory evidence that would raise a reasonable doubt about a defendant's guilt." *Id.* (citing *United States v. Agurs*, 427 U.S. 97, 110-11 (1976)).

The *Ferguson* court adopted a balancing approach to determine whether the loss or destruction of potentially exculpatory evidence renders a defendant's trial fundamentally unfair. 2 S.W.3d at 917. "The first step in this analysis is to determine whether the State had a duty to preserve the evidence." *Id.* "Generally speaking, the State has a duty to preserve all evidence subject to discovery and inspection under Tenn[essee] R[ule] [of] Crim[inal] P[rocedure] 16, or other applicable law." *Id.* However,

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*Id.* (quoting *California v. Trombetta*, 467 U.S. 479, 488-89 (1984)). Therefore, "[i]f the proof demonstrates the existence of a duty to preserve and further shows that the State has failed in that duty, the analysis moves to a consideration of several factors which should guide the decision regarding the consequences of the breach." *Id.* The applicable factors include: "1) The degree of negligence involved; 2) The significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and 3) The sufficiency of the other evidence used at trial to support the conviction." *Id.*

If, after considering these three factors, the trial court determines the trial was or would be fundamentally unfair in the absence of the unpreserved evidence, it may impose an appropriate remedy. *Merriman*, 410 S.W.3d at 785-86. Appropriate remedies include, but are not limited to, the dismissal of the charges or providing a jury instruction such as Tennessee Pattern Jury Instruction 42.23. *Id.* at 786, 796 n.12; *see Ferguson*, 2 S.W.3d at 917 n.11. "[T]he standard of review of a trial court's determination as to whether a defendant was deprived of a fundamentally fair trial is de novo with no presumption of correctness," while we review the appropriateness of the remedy imposed by the trial court under an abuse of discretion standard. *Merriman*, 410 S.W.3d at 797.

In this case, the parties do not contest the trial court's determination that the State had a duty to preserve the evidence and failed to do so; the dispute lies in the remedy imposed by the trial court of a jury instruction rather than dismissal. Assessing the degree of negligence involved, the loss of the video footage was at most due to simple negligence,

not gross negligence or intentional misconduct. Investigator Macfaun downloaded the video of the drug purchase from the recording device and saved it to the KPD's secure computer system. Before Investigator Macfaun downloaded the video onto a CD or thumb drive for evidence, hackers from a foreign country breached the firewall and gained access to the City of Knoxville's computer system and held all its contents at ransom. The city did not pay the ransom, and the KPD lost access to materials on the system, including the video of the drug purchase in this case. The degree of negligence by the State was minimal.

In addition, the significance of the missing evidence was speculative, and the remaining evidence was more than sufficient to support the defendant's conviction. Investigator Macfaun had the informant make a recorded phone call to the defendant in his presence and arrange to purchase $80 of drugs. The audio recording was entered into evidence, and Investigator Macfaun testified that he recognized the defendant's voice on the call. Investigator Macfaun patted the informant down to ensure he had no contraband or money, provided the informant with $80 of recorded government funds, and drove him to a parking lot a few blocks from the defendant's house. Investigator Macfaun and other officers positioned throughout the area observed the informant walk the route to the defendant's home, watch the informant enter the front door of the defendant's residence, and walk back out a short time later. The informant returned to Investigator Macfaun's vehicle and turned over what ultimately testified positive for 0.14 grams of acetylfentanyl, fentanyl, and metonitazene. These drugs were consistent with the drugs found at the defendant's residence during execution of a search warrant three days later. Investigator Macfaun testified that he watched the video of the controlled purchase to make sure it corroborated the informant's report when he uploaded it onto the system. Although the video hypothetically could have shown that the defendant's girlfriend was the one who handed the drugs to the informant, such would not have necessarily exculpated the defendant considering the other evidence tying the defendant to the offense. Additionally, we note that the defendant and his girlfriend were jointly indicted for the offense, and the jury received an instruction on criminal responsibility.

As succinctly stated by other panels of this Court, "dismissal of charges is really reserved for the most egregious of situations, particularly involving gross negligence or intentional acts[,]" *Demling v. State*, No. M2019-01822-CCA-R3-PC, 2021 WL 3399862, at *11 (Tenn. Crim. App. Aug. 4, 2021), *perm. app. denied* (Tenn. Dec. 8, 2021), or "when the evidentiary value of the lost evidence is more significant." *State v. Forte*, No. E2022-01216-CCA-R3-CD, 2025 WL 1420366, at *15 (Tenn. Crim. App. May 16, 2025), *perm. app. denied* (Tenn. Oct. 8, 2025). Moreover, we are mindful that "dismissal of charges under *Ferguson* should not be imposed lightly[.]" *Merriman*, 410 S.W.3d at 797. Nothing in the record indicates the trial court applied an incorrect standard or reached a decision that is against logic or reasoning. Accordingly, we conclude the trial court did not abuse

its discretion in imposing the remedy of a jury instruction rather than dismissal of the charge.

## II. Stipulation

The defendant argues that the trial court erred in reopening the proof to allow the State to enter a stipulation regarding his status as having a prior conviction disqualifying him from being able to possess a firearm.

As detailed above, the defendant and the State entered into a stipulation, the defendant signed the stipulation, the parties presented the stipulation to the court, and it was filed with the court clerk. However, the State closed its case without formally admitting it as an exhibit or publishing it to the jury. During its ruling on the defendant's motion for judgment of acquittal, the trial court ruled that it would reopen the proof and allow the State to read the stipulation.

"Permitting additional proof, after a party has announced that proof is closed, is within the discretion of the trial court, and unless it appears that its action in that regard has permitted injustice, its exercise of discretion will not be disturbed on appeal." *Simpson v. Frontier Community Credit Union*, 810 S.W.2d 147, 149 (Tenn. 1991) (citing *State v. Bell*, 690 S.W.2d 879, 882 (Tenn. Crim. App. 1985)); *State v. Tuttle*, 914 S.W.2d 926, 931 (Tenn. Crim. App. 1995). This Court has noted with approval the rule stated in *United States v. Thetford*, 676 F.2d 170, 182 (5th Cir. 1982):

> A motion to reopen is clearly within the discretion of the trial court. In exercising its discretion, the court must consider the timeliness of the motion, the character of the testimony, and the effect of granting of the motion. The party moving to reopen should provide a reasonable explanation for failure to present the evidence in its case-in-chief. The evidence proffered should be relevant, admissible, technically adequate, and helpful to the jury in ascertaining the guilt or innocence of the accused. The belated receipt of such testimony should not "imbue the evidence with distorted importance, prejudice the opposing party's case, or preclude an adversary from having an adequate opportunity to meet the additional evidence offered."

*State v. Armitage*, 1990 WL 93850, at *3 (Tenn. Crim. App. July 10, 1990) (citations omitted).

The defendant asserts that the trial court's allowing the proof to be reopened "resulted in an injustice to him because without entry of the stipulation, the evidence would have been insufficient to sustain his conviction in Count 14." While it is true that a different

result would have occurred had the proof not been reopened, we cannot determine that reopening of the proof amounted to an injustice because the defendant was not surprised by the stipulation nor did it give the State an *unfair* advantage. As this Court has previously explained, "The mere fact that the evidence presented after the reopening of the case produced a different result is not determinative as long as there is no surprise or unfair advantage." *State v. Alderson*, No. 01C01-9611-cc-00461, 1997 WL 723089, at *2 (Tenn. Crim. App. Nov. 21, 1997) (citing *McBay v. Cooper*, No. 01-A-019205CV00202, 1992 WL 205256, at *3 (Tenn. Ct. App. Aug. 26, 1992)). "The injustice which renders erroneous a reopening of proof is serious inconvenience to a party, the jury or the court, or the introduction of further evidence without a fair opportunity for rebuttal," *Cooper*, 1992 WL 205256, at *3, none of which are present in this case.

A survey of motion to reopen jurisprudence reveals a variety of circumstances in which this Court has upheld a trial court's decision to reopen the proof *after* a defendant made a motion for judgment of acquittal or directed verdict. *See, e.g.*, *Tuttle*, 914 S.W.2d at 929-31 (motion to reopen in order for the State to provide evidence that the defendant was in possession of an automobile that was involved in a burglary); *White v. State*, 497 S.W.2d 751, 754 (Tenn. Crim. App. 1973) (motion to reopen in order for witness to testify providing proof of venue); *State v. Sexton*, No. M2018-00874-CCA-R3-CD, 2019 WL 5700889, at *3-*4 (Tenn. Crim App. Nov. 5, 2019) (motion to reopen to establish the defendant's age as a necessary element of the offense of aggravated statutory rape), *perm. app. denied* (Tenn. Mar. 26, 2020); *State v. Alderson*, No. 01C01-9611-CC-00461, 1997 WL 723089, at *1-*3 (Tenn. Crim. App. Nov. 21, 1997) (motion to reopen to establish the defendant was driving or in physical control of the car for purposes of driving under the influence).

We conclude that the trial court did not abuse its discretion by permitting the State to reopen its case to formally admit the stipulation into evidence. The defendant is not entitled to relief.

### *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

s/ *J. ROSS DYER*
J. ROSS DYER, JUDGE

- 11 -