IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 2, 2019

**COURTNEY KNOWLES v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 07-06139          James M. Lammey, Judge**

———————————————————

**No. W2018-00739-CCA-R3-PC**

———————————————————

Petitioner, Courtney Knowles, appeals from the denial of his petition for post-conviction relief, which challenged his 2012 conviction for rape of a child. In this appeal, Petitioner asserts that his trial counsel was ineffective and that he was denied a full and fair hearing on his post-conviction petition. After a review of the entire record, we conclude that Petitioner was not afforded a full and fair hearing on his petition. Accordingly, we reverse the judgment of the post-conviction court and remand this matter for a new evidentiary hearing. Furthermore, the interests of justice require that under the circumstances of this case, and to insure the public perception of a fair and impartial hearing, the post-conviction proceedings be heard by a different judge than the judge who previously heard the proceedings. In light of our conclusion and disposition in this case, we need not address Petitioner's claims of ineffective assistance of trial counsel at this time.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Criminal Court Reversed and Remanded**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Courtney Knowles, Tiptonville, Tennessee, *Pro Se*.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd and Jennifer Nichols, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

*Trial*

Petitioner was indicted for two counts of rape of a child. The victims of the alleged rapes were T.M.'s minor daughters. T.M. was both Petitioner's half-sister and live-in girlfriend. *State v. Knowles*, 470 S.W.3d 416, 418 (2015). Before trial, the State agreed to sever the two counts. *Id*. The underlying conviction in this case related to T.M.'s oldest daughter. In the summer of 2004, Petitioner moved into the residence of T.M. and her three children. *Id*. In April, 2005, T.M.'s youngest daughter suffered a stroke and was hospitalized for approximately one month. T.M. suggested that Petitioner take the victim, then in third grade, home to get a change of clothes and other necessities. *Id*. After Petitioner and the victim arrived at home, Petitioner removed the victim's clothes and instructed her to touch his penis. He then asked the victim to perform oral sex on him and demonstrated how by sucking his finger. *Id*. The victim then attempted to do as Petitioner had told her to do. She testified that Petitioner also touched her "private area[s]," including her breasts and vagina. *Id*. Petitioner and the victim returned to the hospital, and the victim did not tell T.M. about the incident. *Id*.

At trial, the victim described many other instances of sexual abuse by Petitioner. On Easter Sunday in 2007, T.M. found Petitioner's video camera inside the glove compartment of her vehicle. *Id*. She watched a video of the victim seated on the couch in T.M.'s house and a person, whom T.M. identified as Petitioner by his voice, touching the victim's vagina. A physical examination of the victim revealed evidence of past abuse. *Id*.

Following a jury trial, Petitioner was convicted as charged and sentenced to 25 years' incarceration. Petitioner's sole issue on direct appeal was whether the evidence at trial was sufficient to sustain his conviction. A panel of this court stated, "[a]lthough the defendant has framed his issue as one of evidentiary sufficiency, we perceive the real issue to be whether the State properly elected the offense for which it was seeking a conviction." *State v. Courtney Knowles*, No. W2013-00503-CCA-MR3-CD, 2014 WL 1831018, at *7 (Tenn. Crim. App. May 5, 2014), *perm. app. granted* (Tenn. Sept. 19, 2014). At the conclusion of Petitioner's trial, the trial court required the State to elect the type of penetration as "either fellatio or cunnilingus," and the State elected cunnilingus. The panel concluded that "[d]espite this obvious mistake on the part of the prosecution, we perceive no unanimity problem under these particular circumstances because the instance of fellatio was the only instance of penetration that occurred on that specific day under those very specific circumstances." *Id*. at *6. Without employing a plain error analysis, the panel concluded that the "error was harmless beyond a reasonable doubt."

*Id*. The panel further concluded that the evidence was sufficient to support Petitioner's conviction. *Id*. at \*8.

The Tennessee Supreme Court granted Petitioner's application for permission to appeal to determine whether the State's inaccurate election of the offense constituted plain error. *Knowles*, 470 S.W.3d at 418. Noting that Petitioner did not object at trial to the inaccurate election and did not include the issue in his motion for new trial, the supreme court observed that this court had "reviewed the error as if [Petitioner] had properly preserved it for review on appeal by raising it in his motion for new trial, rather than applying the plain error doctrine." *Id*. at 423. The supreme court agreed that the State's election was inaccurate. Applying a plain error analysis, a majority of the court concluded that the error "did not create a substantial risk of a non-unanimous verdict on the offense of rape of a child." *Id*. at 425. Accordingly, the court affirmed Petitioner's conviction.

The majority also noted that appellate counsel had failed to supplement the appellate record with the parties' closing arguments "despite questioning from this Court during oral argument about the closing arguments made before the trial court." *Id*. at 427. Citing opinions of this court, the majority observed that "a failure to instruct the jury properly about the State's election of offenses may be cured by a prosecutor's closing argument if it provides an effective substitute for the missing instructions. *Id*. (citations omitted). The majority stated, "our decision that the inaccuracy did not amount to plain error is bolstered by [Petitioner]'s failure to provide a record that clearly establishes what occurred in the trial court." *Id*.

Petitioner timely filed a *pro se* petition for post-conviction relief, alleging that his trial counsel was ineffective. Petitioner filed *pro se* amended petitions for post-conviction relief although he was represented by post-conviction counsel. In May, 2017, post-conviction counsel filed a pleading designated as "Supplemental Petition for Relief from Conviction or Sentence." The sole issue presented in this pleading was ineffective assistance of trial counsel by "failing to raise the issue as to whether an inaccuracy in the prosecution's election of offenses amounted to error that entitles the [petitioner] to relief." Following a hearing, Petitioner filed a motion seeking removal of his post-conviction counsel and requesting leave to proceed *pro se*. The post-conviction court granted the motion. Petitioner subsequently filed a motion to reopen the proof, which the trial court denied.

### Post-conviction hearing

A hearing was conducted on January 5, 2018. At the outset of the post-conviction hearing, post-conviction counsel stated that Petitioner's claim for post-conviction relief

was "a legal argument . . . based on the record" and that he did not intend to introduce any proof at the hearing because it was "a matter of law." Post-conviction counsel later clarified that all he intended to submit on behalf of Petitioner's case was the supplemental pleading post-conviction counsel had filed in May of 2017. The State informed the post-conviction court that Petitioner had issued a subpoena for the victim to testify at the hearing. The State further informed the court that the victim lived out-of-state and had "no intention of coming back here ever and doesn't want to be a part of these proceedings" and that the victim's mother was present, but the State asserted that "nothing in [Petitioner's] original or amended petition . . . would give rise to her testimony." The State asked the post-conviction court to release the victim's mother from the subpoena. The post-conviction court refused to allow Petitioner to call the victim or her mother to testify. The court stated that it was "unconscionable and [Petitioner] wants to get some sort of pleasure out of this. I think it's sick."

Actually, the technical record in this appeal reflects that Petitioner filed multiple pleadings, even after post-conviction counsel had been appointed. Included in these pleadings are complaints that his post-conviction counsel was not investigating matters or requesting subpoenas for witnesses who Petitioner believed could provide testimony supporting his claim that trial counsel rendered ineffective assistance of counsel. As explained below, the victim's mother, T.M., was one of those persons.

While it is well-settled that a petitioner cannot file pleadings *pro se* when represented by counsel, *State v. Muse*, 637 S.W.2d 468, 470 (Tenn. Crim. App. 1982), the pleadings were filed and not stricken by the post-conviction court. The State did not even file a motion to strike the *pro se* pleadings. These pleadings contain many allegations that purportedly can be proven by various witnesses, including T.M. Reading the allegations in the light most favorable to Petitioner, if true, they could establish ineffective assistance of counsel by his failure to investigate information known by the witnesses, including T.M. *See* Tenn. Sup. Ct. R. 28 § 2(H) (A colorable claim is defined as "a claim that, if taken as true, in the light most favorable to the petitioner, would entitle petitioner to relief under the Post-Conviction Procedure Act."); *see also* T.C.A. § 40-30-106(f) ("If the facts alleged, taken as true, fail to show that the petitioner is entitled to relief . . . , the petition shall be dismissed.").

Post-conviction counsel also announced that a subpoena had been issued for Petitioner's medical records because Petitioner "says he was in Methodist Hospital on the day that the allegations happened." After a short recess, the following exchange occurred:

[Post-conviction counsel]: Judge, I want to just to get a chance to look into this records thing. If the Court would set this for a ruling in 30 days?

[Prosecutor]: What are we ruling on? We haven't heard the proof.

[Post-conviction counsel]: Well, it's all in the – it's a matter of record in the petition.

[Prosecutor]: So, you're saying you don't intend to put on any proof, including your client?

[Post-conviction counsel]: It's a matter of law.

[Prosecutor]: State makes a motion to dismiss, Your Honor, because if he doesn't intend to put on proof, the law is clear he has to at least put his client on or it's established (indiscernible). So, we make the motion to dismiss the petition.

[Post-conviction counsel]: I have to put my client on?

THE COURT: I think that's the law. And he has to at least testify as to what was alleged ineffective. This goes back so far, I don't understand. What is the issue in this thing?

[Post-conviction counsel]: It's a legal question.

THE COURT: About what?

Post-conviction counsel argued that trial counsel's opening statement and closing argument, which were omitted from the appellate record on direct appeal "really do establish that this is plain error, that it should be recognized in spite of the fact that it wasn't raised at the trial." The State responded that even if trial counsel, who was also Petitioner's appellate counsel, was ineffective for failing to include those portions of the record, Petitioner was not prejudiced by counsel's deficiency because the supreme court concluded that the inaccurate election was not plain error. The post-conviction court expressed its frustration and confusion over the issues, noting that post-conviction counsel "spent half the morning talking about getting some records from Methodist Hospital, now you're talking about – I don't know what you're talking about."

Following another recess, the post-conviction court asked post-conviction counsel, "were there some allegations in the original petition that required an actual witness – fact witnesses?" Post-conviction counsel responded, "I have no doubt there were, but I didn't think there were legitimate allegations." The State then announced its intention to call trial counsel as a witness at the hearing. The State explained that the sole issue raised in Petitioner's amended petition was whether appellate counsel's failure to include opening statements and closing arguments in the appellate record prejudiced Petitioner. The State argued that while both this court and our supreme court noted the omission, both appellate courts concluded that there was no error in the State's election of offenses.

The post-conviction court received Petitioner's medical records in the middle of the hearing. The court noted that the records showed that Petitioner was admitted to Methodist Hospital on April 23, 2005, and the evidence at trial showed that the victim alleged the incident happened on April 17, 2005. The post-conviction court again asked post-conviction counsel, "there were other issues that were in the [post-conviction] petition, I understand that would require – you don't believe that those are worthy of pursuing?" Post-conviction counsel answered, "No, sir." Petitioner then addressed the court, stating that he raised other issues in his post-conviction petition that post-conviction counsel "ignored" and that he did not "want to be forced to waive [his] rights." The following is verbatim from the transcript as to what transpired at this point in the proceedings:

> [Prosecutor]: I'm going to call [trial counsel].
>
> [Post-conviction counsel]: I think my client's unhappy with the way I'm handling –
>
> [Petitioner]: I don't want to be forced to waive my rights. This is a meritus [sic] issue that's been revisited. Everybody knows in the courtroom this issue doesn't make sense. I don't agree with it, I'm going to lose a lot of rights if I don't proceed with this. I got Blinkley [sic] issues, I've got 404(b) issues, I have a 2005 sentence that he never got my waiver of ex post facto waiver and I've got a whole bunch of different issues. This man wants to revisit a Supreme Court issue that's – everybody in the courtroom knows it doesn't make sense and if I go along, I lose so many rights. What about my sentencing?
>
> THE COURT: I'm not sure what you're talking about, [Petitioner].
>
> [Petitioner]: The issue has been visited in the Supreme Court and the Court of Appeals and he wants to revisit it again to you and it's no way

you can argue that because it doesn't even make sense. I was sentenced in 2012 for an offen[s]e that happened prior to the change of the law and I didn't get a chance to get a written waiver on that. That could be a valid issue, but he ignores that one. It was evidence admitted outside of the indictment, people. That could have prejudiced me, he ignored that one.

THE COURT: So long as they elect an offense that occurs within the time of the indictment, it doesn't matter whether it [sic] testified of things that happened outside that time period.

[Petitioner]: What about my sentencing issue?

THE COURT: But anyway, all that would have been covered in the appeal.

[Post-conviction counsel]: And –

[Petitioner]: I'm trying to argue that – I'm trying to argue that –

THE COURT: Did you handle the appeal [directed to trial counsel]?

[Trial counsel]: Yes.

[Petitioner]: I'm trying to argue that [trial counsel] was ineffective.

THE COURT: All right. Well then that's why he's on the stand. He's going to ask him some questions.

[Petitioner]: But the argument's not even on the records.

THE COURT: Let's just ask him – ask him the questions you think necessary, okay?

[Petitioner]: I will, but I need witnesses.

THE COURT: Go ahead.

[Post-conviction counsel]: I would just say to [Petitioner] that he can raise all this in 2254 [sic].

[Petitioner]: So, I'm forced to waive my rights in post conviction hearing when I do have rights to bring witnesses, subpoena witnesses, and raise certain issues? This man right here now going to make me lose all my rights.

THE COURT: You have an attorney representing you that doesn't feel like any of those issues warrant delving into, that the main issue that your attorney and, it appears, the Court of Criminal Appeals and the Supreme Court sees as a problem is the fact that the closing arguments, and to a lesser extent, the opening statements were important for them to look at so they can decide on this. So, that's what they are asking me to do is review that.

[Petitioner]: It's obvious. Favor went to the prosecution.

The State then called trial counsel to testify. Trial counsel testified that he had been practicing criminal law for 21 years. Trial counsel recalled that the trial court had required the State to make an election as to whether the offense "occurred via cunnilingus or fellatio" in addition to electing the date of the offense. Trial counsel testified that he raised the issue "[a]s part of the sufficiency argument" in Petitioner's direct appeal. He testified that the Tennessee Supreme Court concluded that the additional "election wasn't required." Trial counsel recalled that the supreme court granted him "leave to supplement the records if [he] saw fit." Trial counsel "listened to the closing arguments" and determined that it was not "going to be helpful." Trial counsel estimated that he had represented defendants in approximately 40 appeals.

Post-conviction counsel did not cross-examine trial counsel or call any witnesses to testify at the hearing. The post-conviction court questioned trial counsel, asking what he looked for in the opening statements and closing arguments in determining that they would not be helpful to Petitioner's issue on appeal. Trial counsel testified that the supreme court "wanted proof of what the State argued in closing argument . . . whether they mixed and matched [the offenses] in the closing argument and I didn't find that." The post-conviction court also asked trial counsel about a video that was introduced at trial. Trial counsel testified, "[t]he video was [Petitioner] taping the victim and in various stages of undress." Trial counsel also testified that Petitioner had rejected "a five-year [plea] offer[,]" and "[t]he only reason we went to trial was so [Petitioner] could see the victim one more time[.]" Trial counsel stated that Petitioner was already serving a 40-year sentence in federal prison.

While we normally try to avoid long quotes from a transcript, it is nevertheless necessary to quote what transpired from the time trial counsel's testimony ended through

the conclusion of the proceedings to convey the most accurate tenor of the proceedings and to clearly convey why this court is reversing the post-conviction court's judgment and remanding for a new hearing by another judge. The following is what transpired:

THE COURT: Thank you, sir. All right. Argument?

[Prosecutor]: I think we covered it in our opening, Your Honor. I will submit. Briefly, Your Honor, I think [trial counsel]'s testimony was clear that he – that the Supreme Court did ask for additional information, that he reviewed that information, did not find it would be helpful, and certainly did not think that it would have changed their opinion had he presented it to them. And I don't – the State's position is that there simply hasn't been a demonstration of prejudice, even if that strategic choice that he made was ineffective in some way because it prevented them, perhaps, from reviewing it under the lesser harmless error analysis. There hasn't been a demonstration that the outcome of those opinions would have been different, Your Honor, and [Petitioner has] just failed to show prejudice in this case.

[Post-conviction counsel]: Judge, *I would just ask the Court to consider, as I said, I essentially set out argument in the petition* to support authorities as clearly and precisely as I could. We'd just ask the Court to consider that as my argument so that anything I might have said today, or misstated, or omitted does not alter that argument. That's the argument I make. *It's what's in the petition*. (emphasis added)

THE COURT: Am I to understand that your client wanted you to subpoena the victim in this case?

[Post-conviction counsel]: Yes, sir.

THE COURT: And you attempted to do so based on his request?

[Post-conviction counsel]: Yes, sir.

[Petitioner]: *Not the victim, the victim's mother*. (emphasis added)

THE COURT: And the victim is not in the jurisdiction; is that correct, State?

- 9 -

[Prosecutor]: That's correct, Your Honor. Her mother did appear today and based upon addressing Your Honor, and I did address Judge Skahan about that issue because that's where the subpoena actually was issued to Division 1, and we did release her upon Your Honor's instruction.

[Petitioner]: I never got a chance to put [T.M.] on the stand, even though she had information that could have changed the outcome of this. I never got a chance to put her on the stand.

THE COURT: *She's already testified at the trial*. She testified at the trial and *I was not going to allow you to put her back on the stand under any circumstance*, sir. (emphasis added)

[Petitioner]: The mother?

THE COURT: The mother or the child. This trial has been tried years ago. So, I'm not going to retry the case.

[Post-conviction counsel]: And this is another problem I've had with this case. This is – my understanding was that he wanted the victim to be subpoenaed. This is the first time I've heard that he wanted the mother to be subpoenaed.

[Petitioner]: He's confused about the whole case.

[Post-conviction counsel]: It's like every morning is a new day in this case. I can't – I keep getting conflicted information and different theories –

[Prosecutor]: If I may, Your Honor, I think the issue was, at the beginning, when he requested that she be subpoenaed, she was still a minor. So, there was no choice but for [post-conviction counsel] to subpoena the mother.

[Petitioner]: I never asked to subpoena [the victim]. I asked to subpoena [T.M.].

THE COURT: It doesn't matter. If there was new evidence, that would have been for another type of hearing.

- 10 -

[Petitioner]: [The victim] already came out and said Odell [had sex with] me at the crime [sic]. She already came out and said that.

THE COURT: Anyway, [post-conviction counsel], I will read your pleading that you wish me to read, I'll look at the closing argument. I will state for the record this is probably the most troubling thing I've ever heard since I've been practicing law. I put a lot of weight in what [trial counsel] has to say and *I think it's sickening, Mr. Stokes, that you wanted to call the victim in this case –* (emphasis added)

[Petitioner]: My name is not Mr. Stokes.

THE COURT: Whatever your name is.

[Prosecutor]: [Petitioner].

THE COURT: [Petitioner], [Petitioner]. It's the second or third post[-]conviction I've had today. [Petitioner], it's particularly sickening and to come to think there's anything that would have changed this case from what was said on the closing argument when there was a video of you videotaping a child is sickening. And then I come to find out that you wanted to go to trial, *turned down that five-year offer just so you could see that video again. You are a sick individual, sir, and I don't see –* (emphasis added)

[Petitioner]: So, you done read my mind?

THE COURT: So, you can step out and I'll give you a ruling in a couple of weeks. You can step out.

[Post-conviction counsel]: And just so we have the transfer order –

[Petitioner]: I don't give a [expletive deleted] about your ruling. [Expletive deleted] your ruling, [expletive slur deleted].

THE COURT: Get out of here.

[Post-conviction counsel]: -- just so we can send him back to TDOC.

THE COURT: Yeah. Send him back. Okay. So, two weeks from [ ] today, the 19th?

- 11 -

[Prosecutor]: Thank you, Your Honor.

THE COURT: Thank you, [post-conviction counsel]. I'll deny it.

[Post-conviction counsel]: Oh, I understand.

THE COURT: I'll look at it just to make sure. I'll read the closing arguments, but I put a lot of weight in what [trial counsel] had to say.

[Post-conviction counsel]: I understand.

THE COURT: And so, I'll be denying it. So, are you going to want to handle this appeal?

[Post-conviction counsel]: I think it's a good-ish – I mean, respectfully, I think it's an issue that could potentially result in a new trial. But that's – you know, my opinion and four bucks, you could get some coffee.

THE COURT: I will say, for the record, if the Court of Criminal Appeals reverses this *based on this and that poor girl has to testify again so this man can get his kicks*, they will be – it will be a big, bad mistake all because – I don't know, of making an election on the type of sex that happened. And they said that doesn't even matter, so I hope the Court of Criminal Appeals and the Supreme Court says there's no way we're going to reverse this case because this man wants it reversed. *He wants it reversed so he can see this child and see that video again, that's why*. And so – so anyways, it's sickening. (emphasis added)

[Post-conviction counsel]: I understand what the Court's saying. I agree completely. It sickens me as well. I'm just doing my job.

THE COURT: Oh, I understand. Let's adjourn court 'til Monday morning, the 8th of January.

On March 18, 2018, prior to the post-conviction court filing an order denying relief, Petitioner filed a *pro se* "Motion to reopen proof," in which Petitioner asserted that his post-conviction counsel "presented only one issue" at the post-conviction hearing, which "was identical to an argument that the Supreme Court of Tennessee had previously deemed invalid." Petitioner claimed that he was hospitalized on the day that the victim alleged he raped her. Petitioner asserted that post-conviction counsel did not subpoena

his full medical records to support Petitioner's alibi. Petitioner's motion requested "a fair evidentiary hearing."

In a written order denying Petitioner's motion and his petition for post-conviction relief, the post-conviction court concluded that Petitioner failed to prove by clear and convincing evidence that trial counsel's failure to include the State's opening statement and closing argument in the record on appeal was deficient or that Petitioner was prejudiced by the alleged deficiency. The post-conviction court accredited trial counsel's testimony and found that trial counsel's decision not to include the opening statement and closing argument in the appellate record was a strategic decision by trial counsel. The post-conviction court stated, "[t]rial counsel stated that he listened to the statements and did not find where the State mixed up what acts Petitioner performed on the date," concluding that the State's election of the offense did not cause confusion among the jury. The court also concluded, "had counsel included the closing statements with the appellate record, it would not have affected the outcome of Petitioner's case," noting that our supreme court "held that the election by the State was specific enough to eliminate any risk that the jury would return a non-unanimous verdict."

The post-conviction court found "particularly troubling . . . the revelation from trial counsel that [P]etitioner turned down a 5[-]year offer to settle this case just to be able to see the video and confront the victim again." The post-conviction court found that Petitioner gave no legitimate reason for the victim to testify at the post-conviction hearing, and the court noted that Petitioner did not testify at the hearing "but was allowed to interject, often times interrupting post-conviction counsel." The post-conviction court concluded that Petitioner was not prejudiced, noting that "the proof against Petitioner was overwhelming."

Finally, regarding Petitioner's motion to reopen the post-conviction proof, the post-conviction court found that Petitioner was adequately represented by post-conviction counsel, "who rightly presented at the [p]ost-[c]onviction hearing only those issues he deemed relevant and appropriate." Applying Tennessee Code Annotated section 40-30-117(a), the post-conviction court found that Petitioner had satisfied none of the statutory criteria to reopen his post-conviction proceeding. The court therefore denied Petitioner's motion to reopen the proof.

*Analysis*

*Post-conviction issues*

In his *pro se* brief, Petitioner contends that he received the ineffective assistance of counsel at trial and on appeal. He alleges that trial counsel, who also represented

Petitioner on appeal, was ineffective for: 1) failing to object at trial under Tennessee Rule of Evidence 404(b) to a video depicting Petitioner and the victim and failing to raise this issue on appeal; 2) failing to object to evidence that Petitioner and the victim's mother are siblings; 3) failing to impeach the victim with her prior inconsistent statement to law enforcement that she had not been nude in a video for Petitioner; 4) failing to introduce a photo of Petitioner's hand at trial and call an expert witness to establish that the hand in the video was not his; 5) failing to seek a continuance to investigate testimony of the victim that Petitioner claims was a "surprise attack[;]" 6) failing to investigate alibi evidence that Petitioner was hospitalized on the date the victim alleged the offense occurred; 7) failing to provide effective assistance at the sentencing hearing and failing to challenge Petitioner's sentence on appeal.

In response to all of Petitioner's claims, the State argues that Petitioner failed to present any evidence at the post-conviction hearing and that Petitioner failed to cross-examine trial counsel at the post-conviction hearing about his decision not to pursue these issues at trial and on appeal.

Petitioner asserts that he did not receive a full and fair hearing on his post-conviction petition. Petitioner states that the post-conviction court deprived him of the opportunity to call witnesses, to cross-examine witnesses, to testify on his own behalf, and that the court abused its discretion in denying his motion to reopen proof. In his *pro se* "Motion to reopen proof," Petitioner stated that his post-conviction counsel addressed only one issue raised in the post-conviction petition, omitted other issues, and failed to present proof at the post-conviction hearing. Specifically, Petitioner stated that post-conviction counsel failed to obtain Petitioner's medical records that would have shown he was hospitalized at the time the victim alleged the offense occurred. In his motion, Petitioner requested that the post-conviction court "provide a fair evidentiary hearing" and permit Petitioner to present proof supporting the claims in his post-conviction petition.

The right to post-conviction counsel is statutorily based, found in the Post-Conviction Procedure Act. T.C.A. § 40-30-107(b). The justification for this statutory right "is to afford a petitioner the full and fair consideration of all possible grounds for relief." *Frazier v. State*, 303 S.W.3d 674, 680 (Tenn. 2010). In furtherance of this purpose, our supreme court requires a minimum standard of service for all post-conviction counsel. *Id*. at 682; *see* Tenn. Sup. Ct. R. 28, § 6(C)(2)-(4). These minimum standards provide that:

> Appointed or retained counsel shall be required to review the *pro se* petition, file an amended petition asserting other claims which petitioner arguably has or a written notice that no amended petition will be filed,

interview relevant witnesses, including petitioner and prior counsel, and diligently investigate and present all reasonable claims.

Tenn. Sup. Ct. R. 28, § 6(C)(2). However, this court "has repeatedly held that violations of Rule 28 by post-conviction counsel do not afford the remedial right of a second post-conviction hearing." *See Demarcus Keyon Cole v. State*, No. W2015-01901-CCA-R3-PC, 2016 WL 2859196, at *11 (Tenn. Crim. App. May 11, 2016), *perm. app. denied* (Tenn. Sept. 26, 2016) (citations omitted).

Due process in the post-conviction context merely requires that "the defendant have 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Stokes v. State*, 146 S.W.3d 56, 61 (Tenn. 2004) (quoting *House v. State*, 911 S.W.2d 705, 711 (Tenn. 1995)). Specifically, a full and fair hearing requires only "the opportunity to present proof and argument on the petition for post-conviction relief." *House*, 911 S.W.2d at 714; *see also* T.C.A. § 40-30-106(h) ("A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence.").

Under the circumstances of this case, we cannot conclude that Petitioner received a full and fair hearing. Petitioner's post-conviction counsel presented no witnesses or other evidence at the post-conviction hearing and forfeited his opportunity to cross-examine Petitioner's trial counsel, the only witness to testify at the post-conviction hearing. Post-conviction counsel did not call Petitioner to testify about the reasons Petitioner believed his trial counsel was ineffective at trial and on appeal. Upon questioning by the post-conviction court, post-conviction counsel stated he had "no doubt there were" allegations in the petition that would require witness testimony, but post-conviction counsel did not "think there were legitimate allegations." Without any further explanation, post-conviction counsel's response indicates that he did not thoroughly investigate Petitioner's claims. While post-conviction counsel has discretion to determine which issues are worthy of pursuing, we find this miniscule level of representation denied Petitioner an opportunity to be heard at a meaningful time and in a meaningful manner.

The State called trial counsel as a witness. As noted above, post-conviction counsel did not cross-examine the witness. Without any rebuke from the post-conviction court, Petitioner spoke up and informed the court that he wanted to present witnesses regarding multiple issues and did *not* want to present the only issue pursued by post-conviction counsel.

- 15 -

We are not basing our decision in this case upon ineffective assistance of post-conviction counsel. It is well settled that a petitioner in post-conviction proceedings has no right to effective assistance of counsel. However, the post-conviction petitioner is entitled to due process to the extent that he must have "the opportunity to be heard at a meaningful time and in a meaningful manner." *Stokes v. State*, 146 S.W.3d 56, 61 (Tenn. 2004) (quoting *House v. State*, 911 S.W.2d 705, 711 (Tenn. 1995)).

We are not aware of any precedent that states that the mere appointment of counsel who files one pleading, issues two subpoenas, appears in court only to submit a pleading as all evidence presented in favor of Petitioner, and who declines to cross-examine the witness called by the State, is sufficient to meet even the minimal requirement of due process. The appellate record is replete with a showing that the appointment of this post-conviction counsel hindered Petitioner's ability to be heard in a meaningful time and manner. A petitioner is entitled to a hearing, and not just a pro forma physical appearance in a courtroom.

We note that the post-conviction court's preemptive refusal to allow the victim and her mother to testify at the post-conviction hearing, without allowing some showing by Petitioner that their testimony is relevant to the issues raised, is not necessarily a deprivation of Petitioner's right to a full and fair hearing. A petitioner's right to compulsory process to obtain witnesses in their favor is not unlimited and "extends to 'competent, material, and resident witnesses whose expected testimony will be admissible.'" *William Darryn Busby v. State*, No. M2012-00709-CCA-R3-PC, 2013 WL 5873276, at *8 (Tenn. Crim. App. Oct. 30, 2013), *perm. app. denied* (Tenn. Mar. 5, 2014) (quoting *Bacon v. State*, 385 S.W.2d 107, 109 (Tenn. 1964)); *see Roy Anthony Haley v. State*, No. M2017-00976-CCA-R3-PC, 2019 WL 6652020, at *8 (Tenn. Crim. App. Mar. 19, 2019). It is within the court's discretion to determine whether the proffered evidence is relevant. *State v. Forbes*, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995). However, the post-conviction court declared that he would never permit Petitioner to call the victim or her mother as a witness in a post-conviction proceeding. Here, the post-conviction court refused to allow the testimony without determining whether it was relevant to the issues raised. On remand, the post-conviction court should make such a determination if Petitioner desires to present either T.M. or the victim as a witness.

We also conclude that the post-conviction court judge who previously heard this matter must be recused from hearing further proceedings in this case. We believe that the tenor and tone of some of the comments by the post-conviction court indicated its hostility against Petitioner. From the portions of the transcript of the post-conviction hearing quoted above, it is evident that the post-conviction judge who initially heard this case should be recused upon remand for the new evidentiary hearing. The judge made

comments calling Petitioner "a sick individual." The post-conviction court verbally stated that Petitioner only wanted post-conviction relief in order to see the victim and the video again. Taken in context with other comments by the post-conviction court, the court clearly has already determined that Petitioner is not entitled to ever obtain relief, not because of a legal basis, but instead because of what the post-conviction court found was Petitioner's "sickening" efforts "to get his kicks."

In order to maintain the people's confidence in the judicial branch of the people's government, all cases must be tried by unbiased and unprejudiced judges. *Smith v. State*, 357 S.W.3d 322, 340 (Tenn. 2011) (citing *State v. Rimmer*, 250 S.W.3d 12, 37 (Tenn. 2008)). "[T]he preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial." *State v. Reid*, 213 S.W.3d 792, 815 (Tenn. 2006) (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998). A judge should be recused whenever "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994). We do not question the post-conviction judge's subjective intentions. We only conclude that from an objective view, the post-conviction judge must be recused from this case upon remand because the judicial system mandates that the judge must be perceived to be impartial.

Petitioner was denied a full and fair hearing. He is therefore entitled to have the post-conviction court's judgment reversed and to have the matter remanded for a new evidentiary hearing. We emphasize that on remand, the post-conviction court is ordered to allow the parties to present the testimony of all witnesses they desire to call, subject only to the provisions of law that might limit testimony of a witness. In other words, Petitioner is entitled to a fresh start as if there has not yet been an evidentiary hearing.

Finally, unless Petitioner seeks to proceed *pro se* at his new post-conviction hearing, Petitioner is entitled to the appointment of counsel, and appointed counsel must carry out the duties of post-conviction counsel as set forth in Rule 28 of Tennessee Supreme Court Rules. Tenn. Sup. Ct. R. 28, § 6(C)(2). We are aware from public records that Petitioner's prior post-conviction counsel no longer practices law.

Post-conviction counsel is required to file a certification which affirms that he or she investigated possible constitutional violations, discussed any constitutional violations with the petitioner, and raised non-frivolous constitutional claims, and post-conviction counsel "retains the right to make strategic and tactical decisions – including the determination of which issues are reasonable and should be raised and pursued – based on counsel's professional judgment." *Leslie v. State*, 36 S.W.3d 34, 38 (Tenn. 2000) (citing Tenn. Sup.Ct. R. 28, § 6(C)(3), app. C)).

If Petitioner desires to represent himself on remand, the post-conviction court should determine whether Petitioner's decision to proceed *pro se* is knowing and intelligent. "While the constitutional right to self-representation does not apply to post-conviction proceedings, both the statutes authorizing the appointment of counsel in post-conviction proceedings and the rules implementing these statutes recognize that prisoners have the right of self-representation in post-conviction proceedings." *Lovin v. State*, 286 S.W.3d 275, 285 (Tenn. 2009). Prisoners may represent themselves if they do not request a lawyer or decline to accept an appointed lawyer if one is offered; however, such refusal must be in writing and is only effective when the court is satisfied that the prisoner fully understands the right to counsel and the consequences of proceeding *pro se*. *See* Tenn. Sup. Ct. R. 13, §§ 1(e)(3), (f)(1)-(2).

A prisoner's request to represent himself or herself in a post-conviction proceeding must be asserted in a timely manner; be clear and unequivocal; and reflect a knowing and intelligent waiver of the right to counsel. *See Lovin*, 286 S.W.3d at 287-88. To assure that the prisoner's waiver of his or her right to appointed counsel is knowing and intelligent, the court must conduct an intensive hearing on the record to advise the prisoner of the consequences of self-representation and to determine that the prisoner knows and understands the consequences of his or her decision. *See Cottingham v. Cottingham*, 193 S.W.3d 531, 536 (Tenn. 2006).

*Motion to reopen proof*

In denying Petitioner's motion to reopen the proof, the post-conviction court relied upon Tennessee Code Annotated section 40-30-117, which provides that a petitioner may move to reopen his petition for post-conviction relief under limited circumstances after a post-conviction proceeding has been concluded and relief has been denied. The statute provides only three grounds for reopening post-conviction proceedings: 1) a new constitutional right that is given retroactive application, 2) new scientific evidence of actual innocence, and 3) evidence of an improperly enhanced sentence. *See* T.C.A. § 40-30-117(a)(1)-(3).

At the time Petitioner filed his motion, however, the post-conviction proceeding had not been concluded because the post-conviction court had not yet entered an order denying post-conviction relief. In consequence, the Petitioner's request would not be governed by the guidelines of Tennessee Code Annotated section 40-30-117.

"It is well settled that permitting additional proof, after a party has announced that proof is closed, is within the discretion of the trial court, and unless it appears that its action in that regard has permitted injustice, its exercise of discretion will not be

disturbed on appeal." *Simpson v. Frontier Community Credit Union*, 810 S.W.2d 147, 149 (Tenn. 1991) (citing *State v. Bell*, 690 S.W.2d 879, 882 (Tenn. Crim. App. 1985)). "Unless the evidence sought to be introduced on a motion to reopen proof is such as would show a different result would probably occur, the action of the trial judge in refusing to reopen the proof will not be set aside." *Bell*, 690 S.W.2d at 882.

A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the party complaining. *State v. Herron*, 461 S.W.3d 890, 904 (Tenn. 2015); *see also Koon v. United States*, 518 U.S. 81, 100 (1996) (A court "by definition abuses its discretion when it makes an error of law."). Since we conclude that, in effect, Petitioner was not allowed to introduce any proof and he clearly wanted to do so, *and* the post-conviction court clearly relied upon inapplicable law, an injustice occurred, and the post-conviction court erred. So, even if we were not reversing for a new post-conviction hearing, we would have to reverse for Petitioner to be allowed to submit additional proof on the claims of ineffective assistance of counsel.

## CONCLUSION

The judgment of the post-conviction court is reversed, and this case is remanded for a new evidentiary hearing. Upon remand, the post-conviction judge who presided over the first hearing is recused, and another judge shall preside, to be appointed according to law.

_____
THOMAS T. WOODALL, JUDGE